Mr. Cogley, please proceed when you're prepared. May it please the Court, Counsel, that the defendant, Mr. Cogley, has been found guilty of first-degree murder. Your Honors, my name is Tom Cogley. I represent the defendant and the appellant in this matter, Mr. Tyson Keepseagle. In my time here today, I hope to convince you that you should overturn the district court's decision to deny my motion for a judgment of acquittal. At the very least, I believe Tyson is entitled to a new trial based on the plain error involved in the unanimity argument as to one of the children. Now, in order to talk about both of these issues, I think it's important or necessary to talk a little bit about the charges and the counts. And my client was charged with four separate counts of child abuse involving his stepchildren. He was acquitted on one of those accounts and found guilty on three of them. The first count involved a claim of abuse that was alleged by the child's biological father. The child's name, I'll just use initials because I'm not sure what's appropriate, ARQ. And the father talked about or told the jury about what he witnessed when he returned the child home from a powwow. And in my brief, and particularly in closing at the trial, I spent a lot of time talking about the problems or the incredulity of this story. Just to highlight a couple of them, he said that he struck, he heard from 75 yards away my client strike his child in the face, which is amazing on its own, but it's particularly amazing when you consider the fact that this father, this biological father was so hard of hearing that he had to wear headphones and take his testimony through some kind of closed circuit. He also, at one point, just reported that this incident involved one of his children. He later added a second child to the incident. This would be his daughter. He claimed that he saw my client punching. Counsel, your time's short. Aren't these credibility issues you're talking about for the jury? You know, what they saw, how they could hear? Tell me where the legal issue is. Sure. The reason that I'm bringing these up, Your Honor, is because ultimately my client was acquitted of count two, which involved the little girl. And to me, it seems then more likely than not that the father's story wasn't believed by at least some of the jury because they wouldn't have convicted him on ARQ and then found him, yeah, found him not guilty. There's a lot of children in this case. And then found him not guilty of the little girl. There was evidence of other acts committed by my client as to ARQ. Two of the siblings, also stepchildren of my client, also biological children of the same father, testified that they saw my client punch the child in the chest. And this sort of leads into the unanimity argument and the fact that when you look at that testimony given by these two boys, they're around page 230 of the trial transcript and then around page 242. When you read that testimony, whether you're judging it by its credibility or not, there's no evidence that he did any of the things that would be necessary to convict him of child abuse under South Dakota State Law 26-10-1. The jury had to find that he abused, exposed, tortured or cruelly punished ARQ in a manner that doesn't constitute aggravated assault. Now, those terms are defined in State law and they were defined in the jury instructions. Abuse means physical maltreatment. Torture means to cause intense suffering or punish or to punish by inflicting excruciating pain. Torment means to cause severe and unusually persistent or recurrent distress of body or mind. Cruelly punish means to punish in such a way so as to intentionally inflict physical suffering with reckless indifference to pain. Now, even if we believe Tyson did what RQJ and DQ say that he did to ARQ, there's no other evidence if you review their trial testimony that anything occurred as a result of it. For instance, there's no description that he wound back and punched this child in the chest as hard as he could. Or if he just did something like this, the parents sometimes do to get their children's attention. There's no testimony that the child even cried as a result of this. The closest we can be to this. Scalia. Was there evidence of injury of any kind? I'm sorry, sir. Was there evidence of injury? No. Not as a result of this punch. The closest thing we have to the statute is the one of the boys, and this would be in the 240 realm, one of the boys said that the child was crying. But he said he was crying before my client ever physically touched him and that he continued to cry afterwards. I think he went on to say that the child sort of said he can't breathe, but that's the extent of the evidence that was deduced as results from the punch in the chest. Now, the issue that I have with that, and I think it's best illustrated by Justice Scalia in the Shad v. Arizona case. I believe that case was cited in the James Court's opinion. But he used the illustration of we find a burnt, deceased body in a house. And he wrote in Shad that in that situation, if there's sufficient evidence that the defendant set out to kill this person, I think he used the word absurd to set the defendant free because six jurors believed that he strangled her to death and then set fire to the house in his haste to leave, and six jurors believed that he strangled her unconscious and then set the fire to finish her off. And so I actually agree with that because what he's talking about is however you dice it, that defendant committed a murder. But what if one of the two acts that the jury is considering isn't a crime at all? In this case, if the jury believed that ARQ was punched repeatedly in the face and then thrown off the porch, I'm not standing here arguing that that's not child abuse, right? But if some of them believed that and others didn't believe that story, and we have at least some basis to believe that some jurors didn't believe that story because of the acquittal on count two, then we're left with that punch. So we have two separate acts, one of which probably does meet the definition of child abuse under State law, one of which doesn't, at least to the extent that the jury heard the evidence. If I — here's an example. I have a 4-year-old child, and if he takes a cookie and I smack him on the wrist because I told him not to take the cookie, and then later on he goes to school or another child goes to school and they say to the teacher, I saw my dad smack my brother today, that's not enough to convict me of child abuse. Now, it could be if it's also shown that when I did that, I met the statute by causing persistent pain or that I did this with reckless indifference to his suffering or any of the other ways that the statute can be met. But if all you're told is that, that's not enough to meet the statute. The James case was cited by the government, and I think if you read that case, it actually supports our proposition. In that case, the statute says that the crime, this had to do with firearms, but the crime could be committed if the defendant transferred, sold, gave, transported, or delivered a firearm to another person who didn't reside in the same state as the defendant. The court noted that the defendant in that case, the jury in that case, saw evidence of several different ways in which the statute was violated by the defendant. And it noted that any one of those ways would satisfy the statute. I think it was he sold to them, he transported it to them, he gave it to them. There's no need for a unanimity instruction in James because regardless of which of the acts each individual juror believed was proven, it was a crime. But here, if six of these jurors chose not to believe the porch story, as I call it, but they did believe that he punched him in the chest, it's possible that we can't. It's a plain error for the district court not to give a unanimity instruction. I think the best authority that I have for it, in addition to the cases that I have cited in my brief, is just the fact that what could be a more substantial right than for us to sit here and wonder if this defendant was convicted of doing something that wasn't actually a crime. And I think that's what the plain error analysis is intended to do is give us an opportunity to say, you know, something that should have happened here didn't happen here, and it obviously affected this defendant a great deal because we don't have confidence that the jury made its decision based on an act of child abuse as opposed to just an act that, whether we agree with it or not, many parents do do. So you're saying that the jury needed, that it needs to be known whether the jury decided this because the child was punched, thrown off, punched in the stomach or punched in the chest, that those items need to be identified in order to determine whether, which one of those are all of those that the jury relied on? Yes. Yes, that's what I'm saying, Your Honor, because otherwise we don't know. But what argument was made in closing to the, what arguments were presented to the jury in closing with respect to that evidence? With respect to ARQ, I know I made the point that, first of all, I probably spent, if my closing argument was 30 minutes, I probably spent 25 minutes trying to explain to the jury how incredible the father's story was. But I also made clear to them that all you're left with, if you don't believe the father's story, all you're left with is the testimony of RQJ and DQ. And all their testimony established was that my client struck ARQ in the chest with a fist. But we don't know what kind of force. Sufficient to make his breathing difficult. Yes. Yes, Your Honor. I'm sorry, I was trying to track what you were saying. Sufficient to make his breathing difficult, but we don't know. If we think about it from the standpoint of a child crying, I have six children of my own. But I know that when my child sometimes starts to cry, regardless of whether I've touched them or not, they're starting, they will sometimes say, I can't breathe, right? Or they will sometimes sort of, this long, I'm trying to, this long gasp, right? And that's them trying to sort of let out the next bellow. But even if we were to concede that the child might have made that remark, I don't believe that when we go back to those definitions of abuse, all the definitions of the physical maltreatment, the intense suffering, we're talking about fairly significant things when we use those statutes or we use those definitions. And the jury was at best given a modicum of evidence in that regard. And I certainly made the point that if all you're left with is the two boys' testimony about the third, about the three-year-old, that that's not sufficient to be child abuse. Counsel, you're not familiar. I don't think it's in the brief with our Petrantonio case, 2011 case that has very similar facts to this. I'm not, Judge. If you want to, I'm happy to. No. I see that I probably need to reserve the rest of my time. No, no. There would be no point in that, but you could address it in a 28J letter if you wish to. Yes, sir. 2011, P-I-E-T-R-A-N-T-O-N-I-O. Thank you. Thank you, Mr. Cognley.  Mr. Albertson. Thank you, Chief Judge Smith, Judge Wollman, and Judge Benton. May it please the Court, Mr. Cognley, I'm Kirk Albertson. I represent the United States in this case. In 2018, the appellant in this case, Tyson Keats Eagle, physically abused three children with whom he resided. He punched four-year-old A.R.Q. and threw him off the porch of the residence they lived at. I thought there were three things he did. I thought the evidence at trial showed three things, Counsel. There was evidence of, I guess, Your Honor, that's a good point. There was evidence. The government's primary theory was this incident on the porch was a child abuse. But there was evidence from RQJ and from DQ. They talked about seeing the appellant punch A.R.Q. They were not specific. Neither one of them was specific about when it happened. The charge frame was a couple months, and they both testified to seeing appellant punch A.R.Q. at some point during that time frame. One in the chest, one in the stomach, right? Pardon me, Your Honor? One in the chest, one in the stomach, right? Yes, Your Honor. Okay. So they're distinct. Go ahead. Yes, Your Honor. Different description and not clear about when they happened. The government's theory was those corroborated the allegation regarding the porch, that basically the porch incident was the charged incident. But there was this other evidence. Well, the indictment doesn't reference any specific thing, right? Correct. Yes, Your Honor. I'm just talking about how it was argued at closing argument. The defense closing argument was, well, these conflict. This is conflicting evidence. There's different descriptions maybe of this same incident. Did he punch him in the face? Did he punch him in the chest? Did he punch him in the stomach? Or maybe they're talking about different incidents. And so it was sort of raised in that way by the defense. But the government's theory, Your Honor, all along was the porch incident was the allegation underpinning that count of the indictment. What about the, before you get too far in your argument. Yes, Your Honor. You read the Whiteface case. And as you know, we're using South Dakota law here. Yes, Your Honor. By federal statute. If you read the Whiteface case, doesn't it control count one against ARQ? Your Honor, the South Dakota state's case, state versus Whiteface, that's the case, Your Honor. 2014, yep. Yes, Your Honor. I point out a couple differences between that case and this case. First, in the Whiteface case, there was very clearly two incidents that the government was arguing underpinned the child abuse case. There was this first incident where the child had been found with a broken leg. And it was a, we don't know how this happened. The child's leg just popped. And then there's a separate incident four days later when the child's found nonresponsive and has suffered a traumatic brain injury. There were very clearly two different incidents. And the evidence was it didn't all happen at the same time. The defense counsel in that case said we want the jury to make a specific finding regarding both of these charged incidents. And the court said no. And on appeal, the state Supreme Court said that issue was properly preserved regarding the union issue. The defense had clearly raised that as a possible problem. So I think the case is distinguishable in that way. The other thing about the Whiteface case that I think is important to point out is that that case was a bit of a whodunit in terms of, which is often the case in a child abuse infant case, that somehow this child has terrible injuries and the primary caregivers have no idea how it might have happened. That's not what this case is. This case is people saw the defendant, the appellant, abusing ARQ. He had blood around his nose and his face was red. So I agree, Your Honor, Whiteface is a primary case on this statute, but I think it's distinguishable on the facts. Now, I bet you're not familiar with the Picentennial case. I'll pronounce it two or three different ways. One will be right. Our 2011 case, which has very similar facts? I'm not, Your Honor. And you're welcome to do a 28-J, too, on that if you wish to. Yes, Your Honor. Thank you. You do agree, though, the evidence at trial can make an indictment duplicitous? Yes, Your Honor. Of course. It's theoretically possible. I just think on the facts of this case and the way this case was presented to the jury, the indictment was not duplicitous. Then with that, why isn't that plain error? I think that, in my mind, Your Honor, for it to have been plain error, it would have been if the government was trying to invite the jury to convict on multiple different theories. Jury, if you find it happened on this date with the punch that RQJ saw, then you can convict. If you find it on this date with the punch that DQ saw, then you can convict. If you don't believe any of that, but you believe the incident on the porch, then you can convict. I think if the Court had allowed that kind of an argument and then no one had said we need a unanimity instruction, I think I agree there would have been plain error. But it's just not the way that this case was presented. And so I think that that's why there's not. Well, there's still plain error. Was it erroneous? I mean, the evidence that the government presented resulted in a duplicitous indictment. Now, are we talking about duplicity or the indictment being duplicative? Maybe I'm not understanding the Court's question, Your Honor. Well, the discussion here is the question was raised was could the evidence make the indictment duplicitous was the question. But what I'm hearing being described is a concern that the indictment was duplicative or charging something twice or in two different ways. Well, you're right, Your Honor. I guess I was thinking duplicitous in that the way the evidence was presented, it created an issue of there needed to be a unanimity instruction. And my point was I just don't think based on the way the case was presented that there's plain error in this case. Judge Loma, did I answer your question? Well, whether the government argued it or not, was it plain error for the district court not to give a limiting instruction? Again, Your Honor, I don't believe based on the way the case was presented that there was plain error. I think part of it is, is that, again, it goes back to the way the case is presented and the way counsel argued the case. In this case, the defense used the conflicting testimony about the punches to say they can't even agree on how the child was punched. So the concern was that the evidence was confusing to the jury. Right. And that you would, it would be an appropriate instruction to make sure that the jury is convicting on the proper basis. Yes, Your Honor. If there was, I think that, again, if the parties had presented it as there's all these possible incidents that could underpin the count and you can convict on any single incident, then I think that would require a unanimity instruction. I think based on the way this was presented and based on the way the parties argued it, it was very clear the porch incident was the primary incident. There was some evidence of punches or a punch that happened, perhaps, on a different occasion. But, again, it's back to if you look at the testimony of DQ and RQJ on this point, the questions they're asked are, during the charged time frame, did you see him punch ARQ? So they're not really clearly describing, yep, there's a different particular incident I'm thinking about and it happened on this completely different day. Their testimony on this point, and these are, you know, these are young guys. They're 13, 14 years old and they're talking about an incident that happened maybe two years ago. So, unfortunately, we just can't get all the detail we might want on the witness stand in that situation. But I think that part of it is their description of these incidents. They didn't corroborate each other. It's not like they're clearly talking about a separate particular incident. I just think that the way the evidence was presented. See, the vice, we'll call it the vice of a duplicitous indictment is that we don't know what the jury found on every single incident. Yes, Your Honor. Whether there's unanimity in all or only on one. Understood, Your Honor. And, again, I think based on the way this case was presented and the evidence that was presented and the arguments that were made, that it was very clear that the jury was making a finding on the incident that happened on the porch and that there was other evidence about punches. And the point I was making about, in our brief, about the way the statute could be violated, because part of it is the government's argument was kind of the punch could have been in the face, could have been in the chest, could have been in the stomach. It might have all happened on the same day. Witnesses have different recollections of what they saw or what they didn't see. If it all happened at the same time, in the same course of events, then the statute is violated. And we didn't hang our hat on. There might have also been some separate punch on a separate day, and if you believe that that's the only thing that happened, you could convict on that basis. We didn't make that argument at all. And I don't think that the defense tried to explore that either. But the father's credibility was such a central part of this. Doesn't that change the way you've just described the case? Because they could have said, well, the father didn't do it on the porch, but the other times it happened. Your Honor, I think, you know, the father's credibility is part of it, but the father's credibility was fully explored at trial and issues with his credibility. And the jury obviously made their own credibility assessments in reaching their verdict in a quitting on the account involving AYQ and a convicting involving ARQ. The father's credibility is corroborated by the observations of the child, by Charlotte, who was with him, and by law enforcement, pictures of the child's face. And I think that's part of it is the evidence involving ARQ was stronger, that both children had blood around their nose, but there was observations by law enforcement and other witnesses that I just think that to say that. Was there corroboration for? Go ahead. Finish your sentence. I was just going to say, Your Honor, to say that, well, the reason that they convicted on AYQ or ARQ and acquitted on ARQ is simply because they didn't believe the father and they found another witness or another incident must have been it. Was there this support? What I was going to ask is was there supporting observations by someone else about punching in the chest or punching in the stomach? I don't believe so, Your Honor. I believe that those two incidents that the two other boys, RQJ and DQ, they each had their own descriptions of those incidents. And I believe that neither one of those incidents were, assuming they're separate incidents, that testimony from those two boys was not corroborated by any other witnesses or evidence. Your Honors, I think that's all the points that I wanted to make. I don't have any additional points unless the Court has additional questions. Well, my question would be, suppose we would, the Court would determine that count one was duplicitous, it was not plain, it was plain error, and we vacate, we remand with instructions to vacate that conviction on that count, then what happens? Is the entitled to re-sentence, is the defendant entitled to re-sentence it? Well, the defendant was sentenced to concurrent 30-month sentences on all three counts of conviction. I see. Re-sentencing, I suppose, may or may not be appropriate depending on the Court's determination. Okay. Thank you. You did say concurrent, right? Yes, Your Honor. I thought I heard you right. Proceed. Unless the Court has other questions, Your Honor, I'll yield the balance of my time. All right. Thank you, Counsel. Thank you. I think Your Honor's noted several times in regards to this idea of a duplicit indictment, and I think the Court's statement in Kerram that the jury, the danger is that the jury can convict a defendant or might convict a defendant without unanimous agreement on the defendant's guilt with respect to a particular offense, and I think that's, as thoughtful and as articulate as Mr. Albertson can be, I think that's the critical issue of this case is that we just don't know. And I understand the points that he's making between counts one and counts two, but the reality is count two was based on the same evidence and the same witness testimony as count one. And in one of those, he was found guilty, and in the other, he was found not guilty. And so I think we have not just a reason to believe, but we have a legitimate reason to believe that this jury was, if not confused, it was persuaded by the jury to not request a limiting instruction. And the Court did give the general unanimity instruction.  He did, Your Honor. Yes. But Kerram and all the other cases that address this talk about the fact that maybe that general unanimity instruction, while in 99 out of 100 cases it's fine and it suits the purpose, there is that other 1 percent of the case where maybe an additional instruction about a particular act needs to be given, and this case is one of those. So which one of the potential acts would you remind me you would consider not potentially in violation of the law? I think if we're going to separate them into three separate acts, the porch incident, the chest punch, and the stomach punch, although I think you could make an argument that the chest and the stomach are close enough that it's one incident, but if we're going to separate it into three, I think the porch argument, child abuse, absolutely. The stomach punch and the chest punch, though, I don't think meet the definition because there's not enough context. As the government points out, we don't know when it happened. There's not enough context about the circumstances and the cause of it and whether or not it truly meets the definition of maltreatment or intense suffering, any of those things. So I think unless it's the porch incident, either one of the other two incidents don't meet the definition. I see that I'm running out of time. I really appreciate you folks calling us up here. Thank you. Thank you, Mr. Albertson, or excuse me, Mr. Cogley. The court appreciates your service in this case under the Criminal Justice Act and thank you for accepting the appointment. Thank you also, Mr. Albertson, for the argument before the court today. We will continue to review your briefing and render decision in due course. Thank you. I'm quick, I believe.